**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**
---------------------------------------------------------------------x
WEN LIN LIU,
*on behalf of himself and others similarly situated,*

                              Plaintiff,

                       v.

SWEET BASIL FAIRFIELD LLC
     d/b/a Sweet Basil Sushi & Pan Asian Cuisine,
CHUN YIU KWOK
     a/k/a Skye Kwok,
VINCENT WENG,
SHENGLIANG WENG, and
MEI WENG
     a/k/a A Mei Weng,

                             Defendants.
---------------------------------------------------------------------x

Case No. 24-cv-01436

**CLASS AND COLLECTIVE ACTION**
<u>**COMPLAINT**</u>

**JURY TRIAL DEMANDED**

       Plaintiff WEN LIN LIU (hereinafter "Liu" or "Plaintiff"), by and through his attorneys, Troy Law, PLLC, hereby brings this Complaint against Defendants SWEET BASIL FAIRFIELD LLC d/b/a Sweet Basil Sushi & Pan Asian Cuisine (hereinafter "Sweet Basil" or "LLC Defendant") CHUN YIU KWOK a/k/a Skye Kwok (hereinafter "Kwok"), VINCENT WENG (hereinafter "V. Weng"), SHENGLIANG WENG (hereinafter "S. Weng"), MEI WENG a/k/a A Mei Weng (hereinafter "M. Weng;" hereinafter collectively with Kwok, V. Weng, and S. Weng, "Individual Defendants;" Individual Defendants hereinafter collectively with LLC Defendant, "Defendants"), and alleges as follows:

<u>**INTRODUCTION**</u>

     1.    Plaintiff brings this action on behalf of himself and other similarly situated employees of Defendants, against Defendants for violations of the Fair Labor Standards Act ("FLSA"), 20 U.S.C. § 207(a)(1), and of the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. § 31-76c, arising from Defendants' various willful, malicious, and unlawful employment policies, patterns, and/or practices.

2.      Plaintiff alleges pursuant to FLSA that he is entitled to recover from the Defendants: (1) unpaid overtime wages, (2) liquidated damages or prejudgment interest, (3) reasonable attorneys' fees and costs, and (4) postjudgment interest.

3.      Plaintiff alleges pursuant to CMWA that he is entitled to recover from Defendants: (1) unpaid overtime wages, (2) liquidated damages, (3) prejudgment and postjudgment interest, and (4) reasonable attorneys' fees and costs.

4.      Plaintiff has fulfilled all conditions precedent to the institution of this action, or such conditions have been waived.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6.      This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a), because they are so related to claims over which this Court has original jurisdiction as to form part of the same case or controversy under Article III of the Constitution.

7.      Venue is proper in this Court under 28 U.S.C. § 1391(b), as Defendants reside and do business in the District of Connecticut, and a substantial part of the events or omissions giving rise to the claims herein occurred in the District of Connecticut.

## PLAINTIFF

8.      Liu was employed by Defendants from on or about November 27, 2023 through on or about June 16, 2024 to work as a sushi chef at Defendants' Asian fusion restaurant, "Sweet Basil," located at 284 Black Rock Turnpike, Fairfield, CT 06825.

## **DEFENDANTS**

### **LLC DEFENDANT**

9.      Sweet Basil was Plaintiff's employer within the meaning of the FLSA, 29 U.S.C. § 203(d), and CMWA, Conn. Gen. Stat. 31-58(d).

10.     Sweet Basil was throughout the period relevant to this lawsuit an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r)(1).

11.     Sweet Basil was throughout the period relevant to this lawsuit an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A).

12.     Sweet Basil is a domestic limited liability company organized under the laws of the State of Connecticut, with a registered address for service of process and principal place of business at 284 Black Rock Turnpike, Fairfield, CT 06825.

13.     Sweet Basil's business consists of running an Asian fusion restaurant known as "Sweet Basil" at 284 Black Rock Turnpike, Fairfield, CT 06825.

14.     Sweet Basil was, throughout the period relevant to this lawsuit, an enterprise engaged in interstate commerce or foreign commerce with gross annual revenue in excess of five hundred thousand dollars ($500,000.00).

15.     While Sweet Basil was organized and began operating too recently for Experian to have gross sales data available for it, Experian records 284 Sweet Basil LLC—Sweet Basil's predecessor operating at 284 Black Rock Turnpike, Fairfield, CT 06825—as having gross annual sales of six hundred seventy-six thousand dollars ($676,000.00).

16.     If anything, Experian's gross revenue estimate is low-balled; Liu observed that during his employment, Sweet Basil's gross sales amounted to about three hundred thousand dollars ($300,000.00) per month, *i.e.*, about three million six hundred thousand dollars ($3.6 million) per year.

17.     Throughout Plaintiff's employment, Liu and other employees of Sweet Basil handled goods moved in commerce, including ingredients, imported alcohols, and cleaning supplies.

18.     Throughout the period relevant to this lawsuit, Sweet Basil employed about seventeen (17) or eighteen (18) workers at any one time: about three (3) sushi chefs including Plaintiff; about four (4) servers; about two (2) takeout/delivery packers; about one (1) cashier/receptionist; about three (3) stir-fry cooks ("fry woks"); about one (1) teriyaki cook; about one (1) deep-fry cook ("oil wok"); about one (1) dishwasher; and about one (1) or two (2) delivery people.

**INDIVIDUAL DEFENDANTS**

19.     Individual Defendants were, jointly with LLC Defendant and with each other, Liu's employers and the employers of other employees similarly situated to Plaintiff within the meaning of FLSA, 29 U.S.C. § 203(d), and CMWA, Conn. Gen. Stat. 31-58(d), and are liable to Liu and other employees similarly situated as employers.

20.     Individual Defendants are members and managers of LLC Defendant, supervised Liu and other employees of LLC Defendant, and exercised operational and financial control over LLC Defendant.

21.     V. Weng, S. Weng, and M. Weng are brother, brother, and sister respectively.

22.     Individual Defendants committed the complained-of acts and omissions willfully, intentionally, and maliciously.

***CHUN YIU KWOK a/k/a Skye Kwok***

23.     Kwok organized LLC Defendant on or about October 20, 2021.

24.     On or about October 20, 2021, Kwok was appointed registered agent for service of process for LLC Defendant, and accepted that appointment.

25.     Since on or about October 20, 2021, and through the time of this writing, Kwok has been LLC Defendant's registered agent for service of process.

26.     Since on or about October 20, 2021, and through the time of this writing, Kwok has been a member of LLC Defendant, with upon information and belief a twenty percent (20%) ownership interest.

27.     Throughout the period relevant to this lawsuit, Kwok had the authority to hire and fire employees of LLC Defendant.

28.     No later than on or about March 31, 2022, Kwok engaged Tracy Zhu (hereinafter "Zhu") of the Huaxin Accounting Firm, located at 8 Chatham Square, Suite 801, New York, NY 10038, to file annual reports with the Secretary of the State of Connecticut, file quarterly and annual tax returns with the Internal Revenue Service and Connecticut Department of Revenue Services, and keep and maintain LLC Defendant's financial records including but not limited to records of payments made to employees.

29.     Zhu had previously—since its organization on or about September 5, 2019 and through its dissolution on or about September 26, 2023—been the accountant for 284 Sweet Basil LLC, LLC Defendant's predecessor in operating "Sweet Basil" at 284 Black Rock Turnpike, Fairfield, CT 06825.

30.     Zhu is also, and has been since at least on or about March 31, 2022, the accountant for 284 Black Rock LLC, the entity which owns LLC Defendant's premises at 284 Black Rock Turnpike, Fairfield, CT 06825 and which is LLC Defendant's landlord.

31.     Kwok is, and has been since its organization on or about October 19, 2021, 284 Black Rock LLC's registered agent for service of process and a member of 284 Black Rock LLC.

32.     Kwok had been a manager of 284 Sweet Basil LLC during its operation at 284 Black Rock Turnpike, Fairfield, CT 06825, and continued acting as a manager for LLC Defendant.

33.     Kwok is Sweet Basil's principal on its restaurant liquor license effective June 26, 2024 through June 25, 2025 and supervises LLC Defendant's employees to ensure they comply with Connecticut's alcohol distribution laws.

34.     Kwok's relative, Chun Wei Kwok, owns the real property at 1865 North Avenue, Bridgeport, CT 06604, which Sweet Basil uses as an employee dormitory and at which Liu lived during his employment by LLC Defendant.

35.     Throughout the period relevant to this lawsuit, Kwok was responsible for making sure LLC Defendant had sufficient ingredient inventory to operate. From time to time he would requisition ingredients, including but not limited to tuna, from another restaurant in which he had an ownership interest, "Pink Sumo Sushi & Sake Café," located at 4 Church Lane, Westport, Connecticut, 06680 (address a/k/a 87 Post Road East, Westport, CT 06880), and would dispatch Sweet Basil's head chef to pick up said ingredients and bring them back to Sweet Basil.

36.     Throughout the period relevant to this lawsuit, Kwok had and exercised control over LLC Defendant's bank account, and from time to time, on information and belief, made payments on LLC Defendant's behalf to, including but not limited to: Zhu, ingredient vendors, and employees.

37.     Throughout the period relevant to this lawsuit, Kwok had the authority to determine Sweet Basil's employees' wage rates and methods of payment.

38.     Throughout the period relevant to this lawsuit, Kwok was responsible for keeping and maintaining LLC Defendant's financial and employee records, and delegated that responsibility to Zhu.

### VINCENT WENG

39.    V. Weng is upon information and belief a member of LLC Defendant with a forty percent (40%) ownership interest.

40.    Throughout the period relevant to this lawsuit, V. Weng had the power to hire and fire employees of LLC Defendant.

41.    V. Weng fired Liu from his job at Sweet Basil.

42.    Throughout the period relevant to this lawsuit, V. Weng was a manager of Sweet Basil, supervised Liu's and other Sweet Basil employees' work, and controlled their schedules and conditions of employment.

43.    From time to time, V. Weng would drive Liu and other employees between the employee dormitory at 1865 North Avenue, Bridgeport, CT 06604, and Sweet Basil's premises at 284 Black Rock Turnpike, Fairfield, CT 06825 at the beginning and end of their working days. In this way, he controlled which employees worked which days, the beginnings of their working days, and the end of their working days.

44.    Throughout the period relevant to this lawsuit, V. Weng had the authority to determine Sweet Basil's employees' wage rates and methods of payment.

### SHENGLIANG WENG

45.    S. Weng is upon information and belief a member of LLC Defendant with a twenty percent (20%) ownership interest.

46.    Throughout the period relevant to this lawsuit, S. Weng had the power to hire and fire employees of LLC Defendant.

47.    S. Weng hired Liu to work at Sweet Basil.

48.     Throughout the period relevant to this lawsuit, S. Weng was a manager of Sweet Basil, supervised Liu's and other Sweet Basil employees' work, and controlled their schedules and conditions of employment.

49.     From time to time, S. Weng would drive Liu and other employees between the employee dormitory at 1865 North Avenue, Bridgeport, CT 06604, and Sweet Basil's premises at 284 Black Rock Turnpike, Fairfield, CT 06825 at the beginning and end of their working days. In this way, he controlled which employees worked which days, the beginnings of their working days, and the end of their working days.

50.     Throughout the period relevant to this lawsuit, S. Weng had the authority to determine Sweet Basil's employees' wage rates and methods of payment.

### MEI WENG a/k/A Mei Weng

51.     M. Weng is upon information and belief a member of LLC Defendant with a twenty percent (20%) ownership interest.

52.     Throughout the period relevant to this lawsuit, M. Weng had the power to hire and fire employees of LLC Defendant.

53.     Throughout the period relevant to this lawsuit, M. Weng was a manager of Sweet Basil, supervised Liu's and other Sweet Basil employees' work, and controlled their schedules and conditions of employment.

54.     Throughout the period relevant to this lawsuit, M. Weng was Liu's most immediate supervisor.

55.     Throughout the period relevant to this lawsuit, M. Weng had the authority to determine Sweet Basil's employees' wage rates and methods of payment.

## STATEMENT OF FACTS

56.     Liu was employed by Defendants from on or about November 27, 2023 through on or about June 16, 2024 to work as a sushi chef at Defendants' Asian fusion restaurant, "Sweet Basil," located at 284 Black Rock Turnpike, Fairfield, CT 06825.

57.     Liu's primary duties as a sushi chef were to slaughter fish, butcher fish, steam rice, and assemble fish, rice, and other ingredients into sushi, rolls, sashimi platters, and other dishes that customers ordered, according to Sweet Basil's menu that he did not determine and following recipes that he did not create.

58.     Liu's primary duties were neither executive, administrative, nor professional.

59.     Throughout his employment, Liu's schedule rotated between: five-day (5-day) workweeks with two (2) days off; seven-day (7-day) workweeks; and six-day (6-day) workweeks with one (1) day off.

60.     Throughout his employment, Liu worked from about 10:50 AM through about 10:00 PM on those days between Monday through Thursday (inclusive) that he worked.

61.     Throughout his employment, Liu worked from about 10:50 AM through about 11:00 PM on those Fridays and Saturdays that he worked.

62.     Throughout his employment, Liu worked from about 11:50 AM through about 10:00 PM on those Sundays that he worked.

63.     That is, throughout his employment, Liu worked: about fifty-six hours and fifty minutes (56.83 hours) per five-day (5-day) week; about sixty-eight (68) hours per six-day (6-day) week; and about seventy-nine hours and ten minutes (79.17 hours) per seven-day week.

64.     Throughout his employment, Liu worked the following days and approximate hours on the weeks beginning the following Mondays:

    a.     November 27, 2023: Wednesday–Sunday, 56.83 hours;

b.    December 4, 2023: Monday–Tuesday, Thursday–Sunday, 68 hours;

c.    December 11, 2023: Monday–Tuesday, Thursday–Sunday, 68 hours;

d.    December 18, 2023: Monday–Tuesday, Thursday–Sunday, 68 hours;

e.    December 25, 2023: Monday–Tuesday, Thursday–Sunday, 68 hours;

f.    January 1, 2024: Monday, Thursday–Sunday, 56.83 hours;

g.    January 8, 2024: Monday–Sunday, 79.17 hours;

h.    January 15, 2024: Monday–Tuesday, Thursday–Sunday, 68 hours;

i.    January 22, 2024: Monday–Tuesday, Thursday–Sunday, 68 hours;

j.    January 29, 2024: Monday–Sunday, 79.17 hours;

k.    February 5, 2024: Monday, Thursday–Sunday, 56.83 hours;

l.    February 12, 2024: Monday, Wednesday–Sunday, 68 hours;

m.    February 19, 2024: Monday–Sunday, 79.17 hours;

n.    February 26, 2024: Monday–Tuesday, Thursday–Sunday, 68 hours;

o.    March 4, 2024: Monday–Tuesday, Thursday–Sunday, 68 hours;

p.    March 11, 2024: Monday–Tuesday, Thursday–Sunday, 68 hours;

q.    March 18, 2024: Monday–Tuesday, Thursday–Sunday, 68 hours;

r.    March 25, 2024: Monday–Tuesday, Thursday–Sunday, 68 hours;

s.    April 1, 2024: Monday–Tuesday, Thursday–Sunday, 68 hours;

t.    April 8, 2024: Monday–Sunday, 79.17 hours;

u.    April 15, 2024: Monday, Thursday–Sunday, 56.83 hours;

v.    April 22, 2024: Monday–Tuesday, Thursday–Sunday, 68 hours;

w.    April 29, 2024: Monday–Tuesday, Thursday–Sunday, 68 hours;

x.    May 6, 2024: Monday–Sunday, 79.17 hours;

y.      May 13, 2024: Monday, Thursday–Sunday, 56.83 hours;

z.      May 20, 2024: Monday–Tuesday, Thursday–Sunday, 68 hours;

aa.     May 27, 2024: Monday–Tuesday, Thursday–Sunday, 68 hours;

bb.     June 3, 2024: Monday–Sunday, 79.17 hours; and

cc.     June 10, 2024: Tuesday–Sunday, 68 hours.

65.     However, Defendants failed to keep and maintain time-in and time-out records, or records of Liu's hours worked per day and per week.

66.     Upon information and belief, Defendants failed to keep and maintain time-in and time-out records, or records of Liu's hours worked per day and per week, in order to mitigate their liability for wage violations.

67.     Throughout his employment, Liu was paid a flat salary of one thousand two hundred dollars ($1,200.00) per week regardless of how many days (thus how many hours) he worked.

68.     From on or about November 27, 2023 through on or about December 31, 2023, Liu was paid his salary each week entirely off the books in cash.

69.     From on or about January 1, 2024 through on or about June 16, 2024, Liu was paid his salary partially on by the books by check, with the remainder paid off the books in cash.

70.     Liu's net pay by check amounted to between three hundred and four hundred dollars ($300.00–$400.00) each week.

71.     Upon information and belief, Defendants paid Liu partially or completely off the books in order to mitigate their FICA tax liability and to mitigate their liability for wage violations.

72.     Liu and Defendants did not reach any mutual understanding as to the number of hours his flat weekly salary was supposed to cover.

73.    Liu and Defendants did not reach any mutual understanding as to whether his flat weekly salary was supposed to cover all his hours worked regardless of what they were.

74.    Liu and Defendants did not reach any mutual understanding as to whether he was supposed to be compensated according to the fluctuating workweek method under 29 C.F.R. § 778.114.

75.    Accordingly, throughout his employment, Liu's flat weekly salary only compensated him for the first forty (40) hours of his work each week, and failed to compensate him for his hours worked beyond the fortieth (40th) hour in each workweek.

76.    Throughout his employment, Liu's flat weekly salary failed to compensate him for his hours worked beyond the fortieth (40th) hour in each workweek at a rate one and one-half times (1.5x) his regular hourly rate (calculated by dividing his flat weekly salary by forty (40) hours per week).

77.    Throughout his employment, Defendants furnished Liu with lodging at their employee dormitory located at 1865 North Avenue, Bridgeport, CT 06604.

78.    Upon information and belief, the cost to house Liu amounted to approximately one thousand dollars ($1,000.00) per month.

79.    Neither Individual Defendants, nor anyone else on behalf of Sweet Basil, Liu any notice that there would be a lodging credit applied to his wage.

80.    Because neither Individual Defendants, nor anyone else on behalf of Sweet Basil, told Liu there would be a lodging credit applied to his wage, Defendants were not entitled to claim a lodging credit.

81.    Because neither Individual Defendants, nor anyone else on behalf of Sweet Basil, told Liu there would be a lodging credit applied to the minimum wage, Liu's weekly compensation,

for purposes of calculating his regular rate of pay, is his weekly salary paid, plus the weekly value

of his lodging—that is, one thousand four hundred thirty thousand dollars and seventy-seven cents

($1,430.77 = $1,200.00 salary/week + $1,000.00 lodging/month * 12 months/year / 52 weeks/year)

per week.

82.     Defendants committed all the foregoing acts and omissions against Liu, and their

other employees, knowingly, intentionally, willfully, maliciously, and in bad faith.

## COLLECTIVE ACTION ALLEGATIONS

83.     Plaintiff brings his FLSA claims on behalf of himself and all other current and

former non-exempt workers employed by Defendants at Sweet Basil Sushi during the three (3)

years preceding the filing of this Complaint, through entry of judgment in this case (the

"Collective").

## CLASS ALLEGATIONS

84.     Plaintiff brings his state-law claims as a class action pursuant to Rule 23 of the

Federal Rules of Civil Procedure ("Rule 23"), on behalf of himself and all other current and former

non-exempt workers employed by Defendants at Sweet Basil during the two (2) years preceding

the filing of this Complaint, through entry of judgment in this case (the "Class").

85.     The Class members are readily ascertainable. The Class members' number, names,

addresses, positions held, hours assigned and worked, and rates of pay are determinable from

Defendants' records. Notice can be provided by means permissible under Rule 23.

### NUMEROSITY

86.     The Class is so numerous that joinder of all members is impracticable, and the

disposition of their claims as a class will benefit the parties and the Court.

87.    Although the precise number of such persons is unknown, and the facts on which the calculation of the precise number are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) members of the Class.

**COMMONALITY**

88.    There are questions of law and fact common to the Class which predominate over any questions affecting individual members, including:

a.    whether Defendants employed the Class members within the meaning of Connecticut law;

b.    whether the Class members were paid for all hours they worked;

c.    whether the Class members who worked overtime were paid for their overtime hours;

d.    whether the Class members who worked overtime were paid time-and-a-half for their overtime hours; and/or

e.    at what common rate, or rates subject to common method of calculation, were and are Defendants required to pay Class members?

**TYPICALITY**

89.    Plaintiff's claims are typical of those claims which could be alleged by any Class member, and the relief sought is typical of the relief that would be sought by any Class member in a separate action.

90.    All the Class members were subject to the same policy and practice of denying pay for all hours worked, pay for overtime hours worked, and pay at one and one-half times their regular hourly rates for overtime hours worked.

91.    Defendants' policy and practice affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member.

92.    Plaintiff and the other Class members sustained similar losses, injuries, and damages arising from the same unlawful policy and practice.

**ADEQUACY**

93.    Plaintiff is fairly and adequately able to protect the interests of the Class and has no interests antagonistic to the Class.

94.    Plaintiff is represented by attorneys who are experienced and competent in representing plaintiffs in both class actions and wage-and-hour employment litigations.

**SUPERIORITY**

95.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against an entity defendant.

96.    Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.

97.    Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.

98.    Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

99.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

100.     The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

101.     Upon information and belief, Defendants and other employers throughout the state violate the CMWA.

102.     Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, especially where retaliation against one of their number has already taken place.

103.     Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.

104.     Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## CAUSES OF ACTION

### COUNT I.
### VIOLATION OF 29 U.S.C. § 207—FAILURE TO PAY OVERTIME
### BROUGHT ON BEHALF OF THE PLAINTIFF AND THE COLLECTIVE AGAINST
### THE DEFENDANTS, JOINTLY AND SEVERALLY

105.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

106.    29 U.S.C. § 207 provides that "[e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is… employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

107.    29 C.F.R. § 778.113(a) provides that "[i]f the employee is employed solely on a weekly salary basis, the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate.

108.    In this District, it is presumed that flat weekly salaries are intended to compensate salaried employees for only the first forty (40) hours of their work.

109.    While that presumption may be rebutted by a showing of a clear mutual understanding that the salaried employee's salary was intended to compensate him for some other number of hours, or that the salaried employee's salary was intended to compensate for all his hours regardless of their number (in which case the fluctuating workweek method would apply), here there was no such clear mutual understanding.

110.    Accordingly, throughout his employment, Plaintiff's flat weekly salary only compensated him for the first forty (40) hours of his work each week, and failed to compensate him for his hours worked beyond the fortieth (40th) hour in each workweek.

111.    Throughout his employment, Plaintiff's weekly salaries failed to compensate him for his hours beyond the fortieth (40th) hour each week at a rate one and one-half times (1.5x) his regular hourly rate.

112.    Throughout his employment, Plaintiff was a manual worker and was not exempt from overtime under 29 U.S.C. § 213.

113.    29 U.S.C. § 216(b) provides that "[a]ny employer who violates the provisions of… section 207 of this title shall be liable to the employee or employees affected in the amount of their… unpaid overtime compensation… and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

114.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by failing to pay Plaintiff and the Collective overtime.

**COUNT II.**
**VIOLATION OF CONN. GEN. STAT. § 31-76c—FAILURE TO PAY OVERTIME BROUGHT ON BEHALF OF THE PLAINTIFF AND THE CLASS AGAINST THE DEFENDANTS, JOINTLY AND SEVERALLY**

115.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

116.    Conn. Gen. Stat. § 31-76c provides that "[n]o employer, except as otherwise provided herein, shall employ any of his employees for a workweek longer than forty hours, unless such employee receives remuneration for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

117.    In this District, it is presumed that flat weekly salaries are intended to compensate salaried employees for only the first forty (40) hours of their work.

118.    While that presumption may be rebutted by a showing of a clear mutual understanding that the salaried employee's salary was intended to compensate him for some other number of hours, or that the salaried employee's salary was intended to compensate for all his

hours regardless of their number (in which case the fluctuating workweek method would apply), here there was no such clear mutual understanding.

119.     Accordingly, throughout his employment, Plaintiff's flat weekly salary only compensated him for the first forty (40) hours of his work each week, and failed to compensate him for his hours worked beyond the fortieth (40th) hour in each workweek.

120.     Throughout his employment, Plaintiff's weekly salaries failed to compensate him for his hours beyond the fortieth (40th) hour each week at a rate one and one-half times (1.5x) his regular hourly rate.

121.     Throughout his employment, Plaintiff was a manual worker and was not exempt from overtime under Conn. Gen. Stat. § 31-76i.

122.     Conn. Gen. Stat. § 31-68(a)(1) provides that "[i]f any employee is paid by his employer less than the… overtime wage to which he or she is entitled under sections 31-58, 31-59 and 31-60 or by virtue of a minimum fair wage order he or she shall recover, in a civil action, (A) twice the full amount of such… overtime wage less any amount actually paid to him or her by the employer, with costs and such reasonable attorney's fees as may be allowed by the court, or (B) if the employer establishes that the employer had a good faith belief that the underpayment of such wages was in compliance with the law, the full amount of such minimum wage or overtime wage less any amount paid to him or her by the employer, with costs and such reasonable attorney's fees as may be allowed by the court."

123.     Defendants knowingly, willfully, and maliciously disregarded the provisions of the CMWA by failing to pay Plaintiff and the Class overtime.

## **DEMAND FOR TRIAL BY JURY**

124.     Plaintiff demands a trial by jury on all matters so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment providing the following relief:

a.      At the earliest practicable time giving notice of this collective action, or authorizing Plaintiff to give notice of this collective action, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of the notice's issuance, been employed by Defendants at Sweet Basil as non-exempt workers. Such notice shall inform such employees that this lawsuit has been filed, of the nature of this lawsuit, and of their right to join this lawsuit if they believe they were denied overtime;

b.      A declaratory judgment that the practices complained of herein are unlawful under FLSA and CMWA;

c.      An injunction against LLC Defendant, its members, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices and policies set forth herein;

d.      An award of unpaid overtime, and liquidated damages equal to unpaid overtime, due to Plaintiff and any opt-ins under the FLSA;

e.      An award of unpaid overtime, and liquidated damages equal to unpaid overtime, due to Plaintiff under the CMWA;

f.      An award of reasonable attorneys' fees and costs; and

g.      Any such other and further legal or equitable relief as the Court may deem necessary, just, and proper.

Dated: Flushing, NY
        September 8, 2024

                                    TROY LAW, PLLC
                                    *Attorneys for Plaintiff*

_/s/ John Troy_____

John Troy, Esq.
Aaron B. Schweitzer, Esq.
Tiffany Troy, Esq.
41-25 Kissena Boulevard
Suite 110
Flushing, NY 11355
(718) 762-1324
troylaw@troypllc.com