UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WEN LIN LIU, <br>   Plaintiff, | : <br> : <br> : <br> : <br> : | CIVIL CASE NO. <br> 3:24-cv-1436 (JCH) |
| v. | : <br> : | |
| SWEET BASIL FAIRFIELD LLC, et. al., <br>   Defendants. | : <br> : | DECEMBER 9, 2025 |

**RULING ON MOTION TO CERTIFY CLASS (DOC. NO. 45)**

**I.    INTRODUCTION**

The plaintiff, Wen Lin Liu ("Mr. Liu"), brings this suit against Sweet Basil Fairfield LLC ("Sweet Basil,") Chun You Kwok ("C. Kwok,") Vincent Weng ("V. Weng,") Shenliang Weng ("S. Weng,") and Mei Weng ("M. Weng") (collectively, "defendants"), alleging wage violations in contravention of the Fair Labor Standards Act ("FLSA"), 20 U.S.C. § 207(a)(1), and the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. § 31-76c.  See Complaint (Doc. No. 1).  Before the court is Mr. Liu's Motion to Certify Class pursuant to section 216(b) of the FLSA.  See Motion to Certify Class ("Motion") (Doc. No. 45); Memorandum in Support ("Memorandum") (Doc. No. 47).  The defendants oppose the Motion.  See Memorandum in Opposition ("Opposition") (Doc. No. 75); see also Reply (Doc. No. 92).

For the reasons stated below, the court grants the Motion.

**II.   FACTUAL & PROCEDURAL BACKGROUND**

   A.  Plaintiff's Alleged Facts

Mr. Liu was employed by defendants from on or about November 27, 2023, through June 16, 2024, as a sushi chef at defendants' Asian fusion restaurant located on 284 Black Rock Turnpike in Fairfield, Connecticut.  See Affidavit of Plaintiff Wen Lin

1

Liu in Support of Plaintiff's Motion for Conditional Collective Certification ("Liu Affidavit") (Doc. No. 46-2) at ¶ 2.  Mr. Liu's duties included slaughtering and butchering fish, steaming rice, assembling sushi, and preparing other dishes offered on Sweet Basil's menu.  Id. at ¶ 3.  Mr. Liu states that his schedule rotated between five-day, six-day, and seven-day workweeks during which he would work anywhere between 56 and 79 hours per week.  Id. at ¶¶ 5, 9.  Mr. Liu states that defendants did not keep and maintain time-in and time out-records, or records of Mr. Liu's hours worked on a daily or weekly basis.  Id. at ¶ 11.  During the tenure of his employment, Mr. Liu was paid a flat salary of $1,200.00 per week which did not change based on hours or days worked.  Id. at ¶ 13.

Mr. Liu states that he also observed the working hours of each of his coworkers.  Id. at ¶ 29.  With respect to his colleague Xiao Yang ("Yang"), a sushi chef, Mr. Liu stated that Yang worked substantially the same schedule as Mr. Liu and on average worked 6 days per week at around 68 hours per week.  Id. at ¶¶ 34, 37, 39.  Yang's set weekly wage of $1050.00 did not vary according to hours worked.  Id. at ¶ 40.  With respect to other colleagues, Mr. Liu's observations were similar: that his colleagues regularly worked more than 40 hours per week for a wage that did not fluctuate according to hours worked.  See, e.g., id. at ¶ 46 ("Carlton," a sushi chef, was paid a flat compensation while regularly working 68 hours per week);  ¶¶ 65, 69, 70 (Xiao Lin, a fry wok, regularly worked 68 hours per week and was paid $4,600 a month with no overtime adjustments); ¶¶ 81, 85, 86 (like Xiao Lin, "Cindy," another fry wok, regularly worked 68 hours per week and was paid $4,600 each month); ¶¶ 89, 93, 94 (Eric Zheng, a waiter, regularly worked 68 hours per week and was paid $700 per month); ¶¶ 113, 118, 119 ("Menul," a busboy, regularly worked 68 hours per week and was paid

$160 per day, a rate that did not increase even when Menul worked more than 40 hours in a workweek.)

     B.  Procedural Background

Mr. Liu filed his Complaint on September 9, 2024.  See Complaint.  Mr. Liu claims that defendants violated federal and state wage and hour laws in failing to compensate Mr. Liu, and his similarly situated colleagues, for overtime work.  See, generally, id.

On June 3, 2025, Mr. Liu filed a Motion for Conditional Class Certification pursuant to the FLSA.  See Motion (Doc. No. 45).   As part of that Motion, Mr. Liu seeks conditional class certification, court-authorized notice to similarly situated individuals, and the disclosure of contact information for notice to potential opt-in plaintiffs.  Id. Defendants filed their Opposition on July 3, 2025.  See Opposition (Doc. No. 75).  On July 22, 2025, Mr. Liu filed his Reply to the Opposition.  See Reply (Doc. No. 92).

## III.   LEGAL STANDARD

Section 216(b) of the FLSA provides a private right of action to recover, inter alia, unpaid minimum or overtime wages.  29 U.S.C. § 216(b).  Section 216(b) actions may be maintained as a collective by any one or more employees for, and behalf of, himself and other similarly situated employees.  Id.

Collective actions maintained under section 216(b) are distinct from class actions brought under Rule 23 of the Federal Rules of Civil Procedure.  Unlike a Rule 23 class action whereby a class member must expressly exclude himself from the suit, i.e., opt-out of the suit, a section 216(b) class action requires class members "opt-in" to the suit. Myers v. Hertz Corp., 624 F.3d 537, 554-55 (2d Cir. 2010); Perkins v. S. New England

Tel. Co., 669 F. Supp. 2d 212, 217 (D. Conn. 2009) (quoting Neary v. Metro. Prop. & Cas. Ins. Co., 517 F.Supp.2d 606, 618 (D.Conn. 2007)).

However, because section 216(b) does not contain the same procedural mechanism requiring notice be given to all members identified in the class as exists in Rule 23(c)(2), district courts have discretionary power to authorize the sending of notice to potential class members. Holbrook v. Smith and Hawken, Ltd., 246 F.R.D. 103, 105 (D.Conn. 2007). District courts in the Second Circuit undertake a two-stage inquiry when certifying a proposed section 216(b) collective action. Myers, 624 F.3d at 554-55 (2d Cir. 2010); Perkins, 669 F. Supp. 2d at 217. "The first step in determining whether a suit pursuant to the FLSA may proceed as a collective action is for the court to determine whether the proposed class members are similarly situated." Perkins, 669 F. Supp. 2d at 217. "If the court concludes the proposed members are similarly situated, then the collective action will be conditionally certified." Id. The second step of the analysis takes place after discovery, during which analysis the court will examine all the evidence in the record to determine if the proposed class members are similarly situated. Id.

With respect to the first step, the conditional certification stage, the threshold issue is "whether the plaintiff has demonstrated that potential class members are similarly situated." Mike v. Safeco Ins. Co. of Am., 274 F. Supp. 2d 216, 220 (D. Conn. 2003). Plaintiffs can meet this "minimal" burden by "making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Id; see also, Marcus v. Am. Cont. Bridge League, 254 F.R.D. 44, 47 (D. Conn. 2008). In order to satisfy this burden, "the court

4

need only be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominant a determination of the merits in this case." Marcus, 254 F.R.D. at 47 (internal quotations omitted). "[T]he court need not judge the merits of plaintiffs' claims because they are irrelevant to the conditional class certification inquiry, as long as plaintiff asserts a plausible basis for the claim." Id. Indeed, "the court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations." Aros v. United Rentals, Inc., 269 F.R.D. 176, 180 (D. Conn. 2010)

## IV.    DISCUSSION

Mr. Liu has asked this court to certify a conditional class of similarly situated employees at the Sweet Basil restaurant and facilitate Notice to other employees so that they may "opt-in" to Mr. Liu's suit. Mr. Liu and defendants dispute the proper form of Notice. The parties also dispute whether equitable tolling of the statute of limitations is necessary to protect plaintiffs. The court addresses all three questions in turn: conditional certification, adequacy of the notice, and equitable tolling, beginning first with conditional certification.

### A.    Conditional Certification & "Similarly Situated"

In conditionally certifying the collective action, the FLSA requires the court to analyze whether Mr. Liu's proposed class of current and former non-exempt, non-managerial employees are "similarly situated." As part of this first stage, the court determines whether these employees are "similarly situated" based on the pleadings and affidavits before the court. Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007). Though the FLSA and its attendant regulations do not define the term "similarly situated," the Second Circuit has advised that courts afford the FLSA

a liberal construction given its broad remedial purposes.  Braunstein v. E. Photographic Lab'ys, Inc., 600 F.2d 335, 336 (2d Cir. 1978).

Mr. Liu argues that he and all other current and former non-exempt, non-managerial employees were subject to defendants' uniform practice of underpaying employees who worked in excess of forty hours each week.  See Memorandum at 10.  In his Affidavit, Mr. Liu swears that he and his coworkers, who hold a variety of non-managerial positions, including, inter alia, sushi chef, fry wok, waiter, busboy, and dishwasher were all victims of this same practice.  See generally, Liu Affidavit.

However, defendants oppose certification on grounds that Mr. Liu's Affidavit is insufficient to meet Mr. Liu's burden without more.  See Opposition 5-6.  Defendants argue that Mr. Liu lacks the requisite familiarity with day-to-day operations necessary to proffer reliable testimony about his coworkers and that there exists "material issues with [Mr. Liu's] attempt to impute his limited knowledge of the duties and compensation of a sushi chef to other roles at the restaurant."  Opposition at 6.  For the reasons stated below, the court finds defendants' contentions unpersuasive.

First, defendants argue that Mr. Liu cannot proffer reliable testimony as to the Spanish-speaking employees in the Affidavit because (1) Mr. Liu and the Spanish-speaking employees do not share a common language and (2) the Affidavit does not contain specific information as to the compensation structure of the Spanish-speaking employees.  Opposition at 6.  Defendants' arguments fail as to both grounds.  With respect to the first contention, whether or not Mr. Liu could communicate with the Spanish-speaking employees, despite an alleged language barrier, is ultimately a fact-specific credibility determination the court need not make at the conditional certification

6

stage in an FLSA case. Aros, F.R.D. at 180 (D. Conn. 2010). Indeed, as Mr. Liu argues in Reply, it is "plausible for the named parties to communicate and share information regarding compensation and employment terms regardless of fluency." Reply at 3. Defendants' second contention that Mr. Liu's Affidavit does not contain requisite detail as to compensation structure of the Spanish speaking employees is inaccurate on its face. Mr. Liu states that, e.g., Menul, the bus boy "worked sixty-eight (68) hours per week," and "was paid $160 per day," a rate which "did not increase even when Menul worked more than forty (40) hours in a workweek." Liu Affidavit at ¶¶ 118, 119. Given the modest factual showing required of Mr. Liu, the court is not persuaded that the allegations regarding the Spanish-speaking employees are insufficient.

Defendants next advance multiple arguments that the Liu Affidavit is conclusory, threadbare, or otherwise incomplete to satisfy Mr. Liu's burden in showing the putative class members are similarly situated. However, whether Mr. Liu's testimony as to specific employees is "meaningful," see Opposition at 7, contains "critical" facts, see id., or is otherwise "vague" and "non-specific," id. at 9, requires a determination on the merits that the court need not make at the class certification stage. See Fasanelli, 516 F. Supp. 2d at 322 (S.D.N.Y. 2007) (holding that, at the conditional certification stage, the court need not decide evidence advanced in affidavits on the merits and the defendant will have another opportunity to object to certification following discovery); see also Hoffmann–La Roche, 493 U.S. at 174 ("[T]rial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action.") This is especially so where, as here, defendants advance their arguments piecemeal, taking issue with the allegations as they relate to individual employees or small subsets

thereof, rather than viewing the Affidavit as a whole. The court need not scrutinize the allegations at a sentence-by-sentence level given the already modest factual showing required of Mr. Liu—it is enough that he has averred facts related to job duties and compensation across over a dozen employees without the benefit of discovery.

Finally, defendants challenge the similarity and factual nexus between Mr. Liu and his coworkers in alleging that the putative class is similarly situated and subject to a uniform compensation practice concerning overtime wages. Defendants state that Mr. Liu "fails to specify an individualized assessment of what each potential opt-in Plaintiff did on the job." Opposition at 10. That may very well be so. However, Mr. Liu need not advance an "individualized assessment" as to each potential opt-in plaintiff's job responsibilities, as "categorical differences in job positions/duties can be explored on discovery and provide a basis for decertification or class limitation motion by defendant after discovery has concluded." Neary, 517 F.Supp.2d at 623. Indeed, "[t]he court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated." Holbrook, 264 F.R.D. at 106.[1]

Ultimately, despite defendants' contentions, the court is satisfied that Mr. Liu has carried his modest burden in showing that the members of the putative collective are similarly situated for purposes of conditional certification. Courts in this Circuit routinely grant collective certification "based solely on the personal observations of one plaintiff's affidavit." See, e.g., Hernandez v. Bare Burger Dio Inc., 2013 WL 3199292, at *3

---

[1] In addition to their substantive challenges to the evidentiary weight of the Liu Affidavit, defendants also challenge that the English-language translation of the Affidavit is procedurally inadequate. See Opposition at 8. The court is unpersuaded. The Affidavit contains an Affiant Certification stating that Mr. Liu "affirm[s] under the penalties of perjury" that "[t]he foregoing Affidavit… has been translated to me from English to Chinese." See Affiant's Certification in Liu Affidavit. This is "sufficient to establish that the declarant knew what he was signing." Espinoza v. 953 Assocs. LLC, 280 F.R.D. 113, 119 (S.D.N.Y. 2011).


(S.D.N.Y. June 25, 2013).  Courts in this Circuit have also found conditional certification proper "where all putative class members are employees of the same restaurant enterprise and allege the same types of FLSA violations."  Fasanelli, 516 F. Supp. 2d at 322.  The court declines to inquire as to factual disputes or other substantive issues that ultimately concern the merits of the litigation.  Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 262 (S.D.N.Y. 1997) (holding that "the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of similarly situated plaintiffs can exist here.")  The court reminds defendants that they are able to bring a motion for decertification upon the close of discovery.

The court now turns to the issue of court authorization of Notice.

B.      Court Authorization of Notice

Once the court determines that a plaintiff has satisfied his burden at the conditional certification stage, the court "may proceed to authorize an issuance of a notice informing potential additional plaintiffs of their opportunity to opt into the lawsuit."  Liping Dai v. Lychee House, Inc., 2018 WL 4360772, at *5 (S.D.N.Y. Aug. 29, 2018).  There is no authority outlining what form that court-authorized notice should take or the provisions it ought to contain.  Fasanelli, 516 F. Supp.2d at 323.  In utilizing their broad discretion to authorize Notice, "courts should consider the overarching policies of the notice provisions of Section 216(b) . . . which include achieving judicial efficiency and lowering individual costs for plaintiffs."  Liping Dai, 2018 WL 4360772, at *6.

Mr. Liu proposes a Notice of Pendency and Consent Form ("Notice Form") advising potential opt-in plaintiffs of their right to join the collective action.  See Memorandum at 17; Plaintiff's Exhibit 3 ("Proposed Notice of Pendency and Consent to

Sue Form.")  Specifically, he asks that the Notice Form be "disseminated in any relevant language, via mail, email, text message, or social media group and individual chat and posts."  Memorandum at 17.  In conjunction with this dissemination, Mr. Liu "requests authorization for the publication of the full opt-in notice on Plaintiff's counsel's website," id. at 19, and "requests that the [Notice Form] be posted on the conspicuous locations of Defendants' restaurants and included in the employees' pay envelopes or other method of delivery of their paycheck information."  Id. at 20.

To facilitate this Notice, Mr. Liu requests expedited disclosure of contact information of potential opt-in plaintiffs, consisting of an Excel data file of: name, last known mailing address; last known telephone number; last known email address; last known WhatsApp, WeChat and/or Facebook user names; work location; dates of employment; and position for all non-managerial employes who worked for defendants from September 8, 2021, through the present day.  Id. at 13.

Defendants argue the proposed Notice Form is deficient in three respects.  First, the Notice Form does not inform potential plaintiffs that they may be obligated to participate in discovery.  See Opposition at 14.  Second, the proposed Notice Form does not identify and provide contact information for defense counsel.  Id. at 15.  Finally, defendants challenge the request for information as overly broad and an unjustified intrusion into the privacy of non-parties.  Id.  The court agrees with defendants' concerns only with respect to privacy.[2]

---

[2] The court also notes that defendants do not supply the court with an alternative Notice Form or line edits.  Indeed, defendants' objection to the draft Notice is rather cursory.  It is three full paragraphs in length and asserts only general objections, see, e.g., stating that "telephone numbers and email addresses" are an unjustified intrusion into privacy without further discussion of any other category of information.  Opposition at 15.

With respect to the first contention regarding discovery obligations, the proposed Notice Form does contain information regarding the discovery obligations of opt-in plaintiffs.  Indeed, the answer to Question 4 of the proposed Notice reads:

> "While this lawsuit is pending, as part of the discovery process, you may be asked to provide documents or information relating to your employment with Defendants, which may include written questions or answering questions in person under oath, either before or at trial.  For this reason, if you join the lawsuit, you should preserve all documents relating to the Defendants currently in your possession.  You may also be asked to sit for a deposition scheduled at your convenience and/or asked to testify at a trial in the District of Connecticut courthouse."[3]

See Plaintiff's Exhibit 3.  Because the proposed Notice already contains "a neutral and non-technical reference" to discovery obligations, no further revision, addition, or limitation is necessary.  See Valdez v. MichPat & Fam, LLC, 2022 WL 950450, at *14 (E.D.N.Y. Mar. 30, 2022).

In terms of inclusion of defense counsel's information, the Second Circuit has not settled on whether such contact information must be included in section 216(b) Notices. See Valdez v. MichPat & Fam, LLC, 2022 WL 950450, at *14 (E.D.N.Y. Mar. 30, 2022) (detailing different arguments among districts in the Second Circuit); compare Gurrieri v. County of Nassau, 2019 WL 2233830, at *11 (E.D.N.Y. May 23, 2019) ("Inclusion of defense counsel's contact information is not required to render an FLSA notice fair, and is likely to create confusion rendering distribution or collection of consent to join forms less effective.") with Cano v. Four M Food Corp., 2009 WL 5710143, at *11 (E.D.N.Y. Feb. 3, 2009) ("[B]oth counsel's contact information should be included in the notice").  Given the high risk of confusion and the need for sensitive, attorney-client privileged

---

[3] One wonders if defense counsel read the proposed Notice before asserting its first objection.

communications between opt-in plaintiffs and plaintiff's counsel, the court will not require defense counsel's contact information be included in the Notice.

Finally, with respect to the privacy contention, defendants do not elaborate on specific categories of contact information with which they take issue, but do mention "telephone numbers and email addresses" as an "unjustified intrusion." Opposition at 15. Courts have previously refused information disclosure requests for email addresses and telephone addresses absent a plaintiff showing a specific need for that information. Alli v. Bos. Mkt. Co., 2011 WL 4006691, at *6 (D. Conn. Sept. 8, 2011); Delgado v. Ortho–McNeil, Inc., 2007 WL 2847238, *3 (C.D.Cal. Aug.7, 2007). However, given the extent to which email specifically fulfills a role similar to the U.S. Postal Service in everyday life, the court will not require a specific showing of why email addresses are necessary for distribution of the proposed Notice. Though not raised by defendants, the court takes similar issue with Mr. Liu's request for social media "handles," given the sensitive information often contained within social media accounts. Without Mr. Liu demonstrating a specific need for telephone numbers and social media handles, the court does not require defendants disclose that information in the Excel data file.

C. Equitable Tolling

Finally, Mr. Liu requests that the statute of limitations for potential opt-in plaintiffs be equitably tolled for 90 days until the expiration of the opt-in period. Memorandum at 25-26. Defendants oppose Mr. Liu's request on grounds that Mr. Liu has not identified extraordinary circumstances warranting tolling of the statute of limitations. Opposition at 14.

"Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." Johnson v. Nyack Hospital, 86 F.3d 8, 12 (2d Cir. 1996) (citing Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 264 (2d Cir. 1990)).  In the Second Circuit, "equitable tolling is commonly granted upon the filing of a motion for conditional certification of a collective action." Varghese v. JP Morgan Chase & Co., 2016 WL 4718413, at *11 (S.D.N.Y. Sept. 9, 2016).  Equitable tolling is common where a delay between a fully-briefed motion for conditional certification and a court's Ruling could time bar opt-in plaintiffs.  Son v. Hand Hosp., 768 F. Supp. 3d 526, 545 (S.D.N.Y. 2025).  However, "[c]ourts in this district have not agreed upon any standard length of delay that warrants equitable tolling."  Id.

The court will grant an equitable tolling period of 6 months to approximately account for the lapse of time between the completion of briefing of the instant Motion and this Ruling so as to not harm potential opt-in plaintiffs resulting from the court's consideration of the matter.  For that reason, Mr. Liu's request for equitable tolling is granted.

**V.     CONCLUSION**

In light of the above, defendants are required, within 30 days of this Ruling, to provide plaintiffs with an Excel data file containing last known mailing address; email address; work location; dates of employment; and position for all non-managerial employes who worked at Sweet Basil from September 8, 2021, through the present day.

While in some cases a defendant may supply a red line to the court reflecting line edits to a proposed draft Notice, defendants here have failed to do so in their Opposition.  Given the paucity of criticisms advanced by defendants regarding the

13

proposed Notice, see supra footnote 2, the court sees no reason to allow further delay by permitting defendants the opportunity to file a red line. The court has reviewed the draft Notice and approves it subject to the limitations described above.[4]

The court authorizes the final Notice form to be disseminated in any relevant language via mail to the mailing addresses provided by defendants and via electronic mail to the email addresses provided by defendants. In addition, the court authorizes Mr. Liu to publish the final Notice Form on plaintiffs' counsel's website. Defendants are required to post the final Notice Form in conspicuous locations in any Sweet Basil restaurant. The opt-in period will run 90 days from the date of this Ruling. Mr. Liu is authorized to send a Reminder Notice, via correspondence consistent with the above, on the 45th day of the opt-in period.

**SO ORDERED.**

Dated at New Haven, Connecticut this 9th day of December 2025.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

[4] The court notes the following grammatical errors in the proposed Notice form which the court directs plaintiffs to correct before publication along with the substantive limitations described above.

On page 1 of the proposed Notice, the second sentence should read "Plaintiff Wen Lin Liu worked for Defendants and **has** brought this action on behalf of all other current and former employees who have worked for Defendants. . ." rather than "**have** brought."

On page 4, in the answer to Question 10: "Should I get my own attorney?" the second sentence of the answer should read: "However, if you choose not to be represented by Troy Law, PLLC, you will need to confer with **that other attorney** regarding their costs and fees," rather than "confer with **them**. . ."